# 13-289

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

HOTI ENTERPRISES, L.P.,

*Debtor,*

HOTI ENTERPRISES, L.P., HOTI REALTY MANAGEMENT CO., INC.,

*Appellants,*

—against—

GECMC 2007 C-1 BURNETT STREET, LLC,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE
## GECMC 2007 C-1 BURNETT STREET, LLC

GEORGE B. SOUTH III, ESQ.
DANIEL G. EGAN, ESQ.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Appellee
GECMC 2007 C-1 Burnett
Street, LLC*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee GECMC 2007 C-1 Burnett Street, LLC states that its sole member is the Trust established on behalf of the GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates 2007-C1.  No publicly held corporation owns 10% or more of the stock of GECMC 2007 C-1 Burnett Street, LLC.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

RESTATEMENT OF THE ISSUE ON APPEAL.................................1

STATEMENT OF THE CASE ............................................................1

STANDARD OF APPELLATE REVIEW ...........................................5

STATEMENT OF THE FACTS .........................................................6

    A.    The Note and Mortgage in Favor of GECMC ....................6

    B.    The Foreclosure Action and Appointment of the Receiver ................7

    C.    Commencement of the Chapter 11 Cases ...........................8

    D.    The Cash Collateral Order...............................................9

    E.    The Debtors' Allegations Regarding GECMC's Secured Claim ......11

    F.    Confirmatory Assignment Documents................................14

    G.    The Reconsideration Motion and Order...............................14

    H.    The Appeal ...................................................................16

SUMMARY OF ARGUMENT ...........................................................16

ARGUMENT .....................................................................................18

    A.    Arguments Raised for the First Time on Appeal Have Been Waived and Should Not be Considered by this Court .....................18

    B.    The Debtors' Request for Relief Under Federal Rule 60(b)(1) – (3) Was Untimely ..................................................................19

        1.    The Reconsideration Motion Was Filed More Than One Year After the Cash Collateral Order Was Entered.................19

        2.    The Debtors' Arguments Regarding the Dedvukaj Declaration Should Be Rejected ...............................................22

            a.    The Dedvukaj Declaration is Null and Void as an Improper *Pro Se* Filing...................................22

            b.    The Debtors' Arguments Regarding Notice Pleading Must Fail........................................24

    C.    Relief Under Federal Rule 60(b)(6) is Not Justified..........................27

# TABLE OF CONTENTS
### (continued)

**Page**

D.     The Bankruptcy Court Did Not Abuse Its Discretion in Denying the Debtors' Request for Relief Under Federal Rule 60(d)(1)...........28

    1.     The Debtors' Request for Relief Under Federal Rule 60(d)(1) Was Untimely and Improper .....................................28

    2.     The Debtors Have Not Satisfied Their Burden of Proof Under Federal Rule 60(d)(1)....................................................30

       a.     No Evidence of Fraud in Connection with Loan Documents ....................................................................31

       b.     No Proof of Lack of Consent to the Cash Collateral Order ............................................................32

       c.     The Debtors' Argument Regarding the Carve-Out is Absurd ................................................................35

    3.     The Confirmatory Assignment Documents Mooted the Debtors' Arguments of Fraud ........................................36

E.     The Bankruptcy Court Did Not Abuse Its Discretion in Finding That There Was No "Fraud on the Court" Under Federal Rule 60(d)(3)...............................................................................................37

F.     The June 14 State Court Order Was Stricken From the Record and Cannot Be Considered on Appeal ...............................39

CONCLUSION ....................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Androse Assocs. of Allaire, LLC v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*,
472 B.R. 666 (S.D.N.Y. 2012) ......................................................................19

*Bagnato v. The Home Depot*,
No. 03-CV-0789E (SC), 2004 WL 625270 (W.D.N.Y. Jan. 15, 2004) ...............26

*Bell v. South Bay European Corp.*,
486 F. Supp. 2d 257 (S.D.N.Y. 2007) ..........................................................24

*Bogle–Assegai v. Connecticut*,
470 F.3d 498 (2d Cir. 2006).........................................................................18

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*,
117 F.3d 655 (2d Cir. 1997) ...............................................................28, 30, 31

*Chianese v. Meier*,
729 N.Y.S.2d 460, 285 A.D.2d 315 (1st Dep't 2001), *aff'd as modified*,
98 N.Y.2d 270 (2002) ...............................................................................14, 32

*Citibank, N.A. v. Vebeliunas*,
332 F.3d 85 (2d Cir. 2003) ...........................................................................5

*Cody, Inc. v. Town of Woodbury*,
179 F.3d 52 (2d Cir. 1999) .........................................................................5, 6

*Eagle Assocs. v. Bank of Montreal*,
926 F.2d 1305 (2d Cir. 1991) .......................................................................24

*Frank M. McDermott, Ltd. v. Moretz*,
898 F.2d 418 (4th Cir. 1990) .......................................................................23

*Frayler v. N.Y. Stock Exchange, Inc.*,
118 F. Supp. 2d 448 (S.D.N.Y. 2000) ............................................................24

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) .........................................................................31

*Gottlieb v. S.E.C.*,
   310 Fed.Appx. 424 (2d Cir. 2009).....................................................31

*Greene v. U.S.*,
   13 F.3d 577 (2d Cir.1994) ............................................................18

*Hadges v. Yonkers Racing Corp.*,
   48 F.3d 1320 (2d Cir. 1995) .........................................................38

*Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*,
   153 F.3d 61 (2d Cir. 1998) ...........................................................36

*In re Acorn Elston, LLC*,
   Case No. 10-14807 (SHL) (Bankr. S.D.N.Y. Sept. 11, 2010) ............34

*In re Lizeric Realty Corp.*,
   188 B.R. 499 (Bankr. S.D.N.Y. 1995)...........................................34

*In re Old Carco LLC*,
   423 B.R. 40 (Bankr. S.D.N.Y. 2010)........................................37, 39

*In re R&G Props., Inc.*,
   Case No. 08-10876, 2009 WL 2043875 (Bankr. D. Vt. July 6, 2009)...............34

*In re Taylor*,
   357 B.R. 360 (Bankr. W.D. Pa. 2006)...........................................21

*In re Vintage Condo. Dev., LLC*,
   Case No. 13-08431 (DPC) (Bankr. D. Ariz. May 17, 2013).............34

*In re White Glove, Inc.*,
   Case No. 98-12493, 1998 WL 731611 (Bankr. E.D. Pa. Oct. 14, 1998)..........36

*Jackson v. Kerns*,
   No. 96 Civ. 6171 (MGC), 2005 WL 3086662 (S.D.N.Y. Nov. 18, 2005).........30

*James v. U.S.*,
   603 F.Supp.2d 472 (E.D.N.Y. 2009) .............................................31

*Jones v. Niagara Frontier Transp. Auth.*,
   722 F.2d 20 (2d Cir. 1983) ...........................................................24

*King v. First Am. Investigations, Inc.*,
   287 F.3d 91 (2d Cir. 2002) ...............................................................37

*La Jolla*
   *UTC Corp.*, Case No. 11-05973 (Bankr. S.D. Cal. Apr. 11, 2011)....................35

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962)...........................................................................21

*LinkCo, Inc. v. Akikusa*,
   615 F.Supp.2d 130 (S.D.N.Y. 2009), *aff'd* 367 Fed.Appx. 180 (2d Cir.
   2010) ...................................................................................27, 28, 30, 31

*Lubit v. Chase (In re Chase)*,
   372 B.R. 142 (Bankr. S.D.N.Y. 2007)................................................23

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ...........................................................5, 27

*NWL v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*,
   320 B.R. 518 (Bankr. S.D.N.Y. 2005)...............................................40

*Park v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   430 B.R. 65 (S.D.N.Y. 2010) ...........................................................19

*S.E.C. v. Sassano*,
   No. 09 CIV. 5010 (LBS) (GWG), 2011 WL 2693881 (S.D.N.Y. July 11,
   2011) ................................................................................................26

*Shangold v. Walt Disney Co.*,
   275 Fed.Appx. 72 (2d Cir. 2008)......................................................40

*Shapiro, Bernstein & Co. v. Continental Record Co.*,
   386 F.2d 426 (2d Cir. 1967) .............................................................24

*Space Hunters, Inc. v. United States*,
   Case No. 10 Civ. 6335 (CM), 2011 WL 1899627 (S.D.N.Y. May 17,
   2011) ................................................................................................38

*United States v. Smiley*,
   553 F.3d 1137 (8th Cir. 2009) ..........................................................38

*United States v. Wolfish*,
    525 F.2d 457 (2d Cir. 1975) ...............................................................23

*Warren v. Garvin*,
    219 F.3d 111 (2d Cir. 2000) ...............................................................20

## STATUTES

11 U.S.C. § 363 ..............................................................................33, 34

11 U.S.C. § 543(d) .................................................................................8

28 U.S.C. §§ 158(d)(1) and 1291 ..........................................................1

28 U.S.C. § 1654 .................................................................................24

## OTHER AUTHORITIES

FED. R. BANKR. P. 9006(b)(2) ..............................................................20

FED. R. CIV. P. 7(a) .............................................................................26

FED. R. CIV. P. 60(b) ....................................................20, 25, 27, 30

Fed. R. Civ. P. 60(c) ....................................................................17, 20

S.D.N.Y. LBR 2090-1(e) .....................................................................23

## JURISDICTIONAL STATEMENT

This appeal (the "Appeal") arises out of an order entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on May 16, 2012.  Hoti Enterprises, L.P. ("Hoti Enterprises") and Hoti Realty Management Co., Inc. (together with Hoti Enterprises, the "Debtors") appealed the Bankruptcy Court's order to the United States District Court for the Southern District of New York (the "District Court").  On December 27, 2012, the District Court entered an opinion and order affirming the Bankruptcy Court's decision.  On January 23, 2013, the Debtors appealed the District Court's opinion and order to this Court.  This Court has appellate jurisdiction over this Appeal under 28 U.S.C. §§ 158(d)(1) and 1291.

## RESTATEMENT OF THE ISSUE ON APPEAL

Whether the Bankruptcy Court abused its discretion in entering the order (the "Reconsideration Order"), which was affirmed by the District Court, denying the Debtors' *Motion for Relief from Stipulation and Order Governing Debtors' Use of Cash Collateral and Related Matters Pursuant to Bankruptcy Rule 9024* (the "Reconsideration Motion").

## STATEMENT OF THE CASE

At the outset of the Debtors' chapter 11 bankruptcy cases, the Debtors and Appellee GECMC 2007 C-1 Burnett Street, LLC ("GECMC")—which was a

creditor of the Debtors holding a first priority lien on and security interest in substantially all of the Debtors' assets, including a residential apartment complex owned by one of the Debtors and all rents and proceeds generated therefrom— negotiated and agreed on the terms and conditions under which cash constituting GECMC's collateral could be used during the chapter 11 cases to, among other things, maintain and operate the apartment complex and pay for the costs and expenses associated with the bankruptcy cases. This agreement was memorialized in a stipulation between the parties that was approved by the Bankruptcy Court in a Cash Collateral Order (as defined below) following hearings at which the Debtors' legal and business representatives were present and actively participated.

More than fourteen (14) months after the Cash Collateral Order was entered, the Debtors filed a motion seeking reconsideration of certain select provisions of the Cash Collateral Order, but not the entire order. At a hearing held on May 3, 2012, the Bankruptcy Court ruled, among other things, that the Debtors were not entitled to the relief requested in the Reconsideration Motion. The Bankruptcy Court subsequently entered the Reconsideration Order denying the Reconsideration Motion. The Bankruptcy Court's decision to deny the Reconsideration Motion was a sound exercise of its discretion and was properly affirmed by the District Court.

In support of their appeal, the Debtors make unfounded and reckless allegations of fraud and misconduct and have crafted new and improper arguments unsupported by applicable law or the record on appeal. Regardless, the Debtors' failure to file the Reconsideration Motion by the statutorily-imposed deadline is fatal to their request for relief. The Debtors claim they are entitled to the relief requested because of purported fraud, misconduct, mistake, and/or excusable neglect, which are the stated grounds for relief under Rule 60(b)(1) through (3) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"). Applicable law, however, precludes the Debtors from obtaining the requested relief because (i) Federal Rule 60(c) requires that a motion for relief under subsections (b)(1) through (3) be filed within one year after entry of the underlying order, and (ii) Rule 9006(b)(2) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") provides that such one-year deadline may not be extended under any circumstances. The Debtors filed the Reconsideration Motion more than fourteen months after entry of the Cash Collateral Order. Therefore, as a matter of law, and as the Bankruptcy Court properly found and the District Court correctly affirmed, the Debtors are not entitled to the relief requested.

The Debtors have tried to raise several new arguments to support their appeal; however, such arguments cannot be raised for the first time on appeal and the District Court properly found that all such arguments were waived by the

Debtors.  The Bankruptcy Court and District Court also properly rejected the Debtors' argument that relief was warranted under Federal Rule 60(b)(6), which may be utilized only when the grounds for relief do not fit within one of the other enumerated grounds set forth in Federal Rule 60(b).  All of the Debtors' underlying arguments—which consist of allegations of fraud, misconduct, mistake, and/or excusable neglect—fit squarely within the enumerated grounds contained in Federal Rule 60(b)(1) through (3).  The Debtors sought relief under Federal Rule 60(b)(6) in a blatant attempt to side-step the one-year limitations period under Federal Rule 60(c).  Applicable law is clear that Federal Rule 60(b)(6) may not be utilized under these circumstances, and the Bankruptcy Court correctly concluded the same.

In addition, relief under Federal Rule 60(d)(1) and (3) may not be sought when the alleged fraud falls within the type of fraud set forth under Federal Rule 60(b)(3).  The record clearly demonstrates that, prior to the expiration of the one-year anniversary of entry of the Cash Collateral Order, the Debtors possessed all relevant documents and information that they believe support their allegations of fraud.  The Debtors had sufficient opportunity to seek reconsideration of the Cash Collateral Order under Federal Rule 60(b)(3) within the time limit prescribed under Federal Rule 60(c), and their failure to do so bars them from obtaining relief under Federal Rule 60(d)(1) and (3).

Regardless, the Debtors cannot satisfy the stringent burden of demonstrating entitlement to relief under Federal Rule 60(d)(1) or (3), which requires an elevated showing of fraud.  The Debtors have made conclusory allegations of fraud that are unsupported by any evidence in the record, and have not demonstrated that a denial of the relief sought would constitute a "grave miscarriage of justice" or "fraud on the court," which is required to obtain relief under Federal Rule 60(d)(1) or (3). Accordingly, the Bankruptcy Court properly rejected the Debtors' arguments for relief under these provisions and the District Court correctly affirmed the Bankruptcy Court's decision.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's conclusions of law are reviewed de novo and its findings of fact are reviewed only for clear error.  *See Citibank N.A. v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).  In addition, a motion for relief from an order or judgment is within the discretion of the court.  *See Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986).  Accordingly, the standard of review for the denial of a motion for reconsideration under Federal Rule 60 is abuse of discretion.  *See Stupakoff v. Otto (GMBH & Co. KG) (In re Spiegel, Inc.)*, 269 Fed.Appx. 56, 57 (2d Cir. 2008) ("Review of a denial of a Rule 60(b) motion is subject to an abuse of discretion standard."); *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 56 (2d Cir. 1999) ("We review the denial of a 60(b) motion for abuses of

5

discretion."). Further, "[a]n appeal from the denial of a 60(b) motion raises only the question of whether that motion was properly disposed; it is not a vehicle for examining the underlying judgment itself." *See Town of Woodbury*, 179 F.3d at 56.

## STATEMENT OF THE FACTS

### A.     The Note and Mortgage in Favor of GECMC.

Hoti Enterprises was the prior owner of a residential apartment complex located at 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue, Brooklyn, New York (the "Property"). As of the date of the Debtors' bankruptcy filing, GECMC possessed a claim against the Debtors in excess of $40 million secured by a valid, perfected, first priority security interest in all or substantially all of the Debtors' assets, including, among other things, the Property and all rents, leases, income, proceeds, and other collateral related thereto. A-574.[1]

Pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated February 15, 2007 (the "Mortgage"), between Hoti Enterprises and Deutsche Bank Mortgage Capital, L.L.C. ("Deutsche Bank"), Hoti Enterprises pledged the Property as collateral to secure, among other things, payments due under an Amended, Restated and Consolidated Promissory Note in the original

---

[1]     Citations to the Appendix will be to "A-____." Citations to other District Court docket entries and Bankruptcy Court docket entries will be to "D. Dkt. No. ___" and "Bk. Dkt. No. ___," respectively.

principal amount of $31,000,000 (the "<u>Note</u>").   A-574.   Hoti Enterprises also executed and delivered an Assignment of Leases and Rents dated February 15, 2007 (the "<u>Assignment of Rents</u>").   A-574.   The Mortgage, Note, Assignment of Rents and other loan documents (collectively, the "<u>Loan Documents</u>") were thereafter assigned to U.S. Bank National Association, as successor to Wells Fargo Bank, N.A. ("<u>Wells Fargo</u>"), as Trustee for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "<u>Trust</u>") by assignments dated May 8, 2007.   A-574; A-1881; A-1894; A-1899.   The Loan Documents were subsequently assigned to GECMC on or about February 6, 2009.   A-574.

B.   **The Foreclosure Action and Appointment of the Receiver.**

On or around November 1, 2008, the Debtors defaulted on their obligations under the Loan Documents, and the Trust, in accordance with its rights under the Loan Documents, accelerated and declared to be immediately due and payable all sums due to it by the Debtors.   On or about February 27, 2009, GECMC commenced a foreclosure action (the "<u>Foreclosure Action</u>") in New York State Supreme Court, Kings County (the "<u>State Court</u>") with respect to the Property.   By order dated March 16, 2009 in the Foreclosure Action, Barbara Odwak, Esq. was appointed as receiver to operate and manage the Property (the "<u>Receiver</u>").

**C.      Commencement of the Chapter 11 Cases.**

On October 12, 2010, in an effort to prevent the Foreclosure Action from proceeding, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  A-5.  The Debtors retained numerous law firms and bankruptcy attorneys during the course of their chapter 11 cases, including Rattet Pasternak LLP ("Rattet Pasternak"), Tanya P. Dwyer, Esq. ("Ms. Dwyer"), Pick & Zabicki LLP, and Backenroth Frankel & Krinsky, LLP, which firm has represented the Debtors since approximately July 2012.   On October 22, 2010, GECMC filed a motion in the bankruptcy cases for entry of an order, among other things, excusing compliance with section 543 of the Bankruptcy Code and allowing the Receiver to remain in possession and control of the Property (the "543 Motion").[2]  Bk. Dkt. No. 10.  In addition, on November 5, 2010, GECMC filed a motion in the bankruptcy cases seeking relief from the automatic stay or, alternatively, dismissal of the bankruptcy cases on the grounds that, among other things, the Debtors could not fund the bankruptcy cases because they had not reached any agreement with GECMC on the use of cash collateral and had not offered GECMC any adequate protection in exchange for the use of cash

---

[2]    Section 543(a) and (b) of the Bankruptcy Code requires a prepetition receiver to turn over to the trustee or debtor in possession any property of the debtor that is in the receiver's possession. 11 U.S.C. § 543(a) and (b). Under section 543(d), however, a bankruptcy court can excuse compliance with this turnover requirement and allow the receiver to remain in possession of the debtor's property during the bankruptcy case. 11 U.S.C. § 543(d).

collateral.  Bk. Dkt. No. 24.  On November 17, 2010, the Debtors filed a response to the 543 Motion in which they requested, among other things, authority to use cash collateral that was subject to GECMC's security interests and the approval of certain adequate protection to be provided to GECMC in exchange for the use of cash collateral.  Bk. Dkt. No. 34.

### D.    The Cash Collateral Order.

On December 22, 2010, the Bankruptcy Court entered an order approving a stipulation that was negotiated by and between the Debtors and GECMC authorizing the limited use of GECMC's cash collateral during the chapter 11 cases and allowing the Receiver to remain in possession and control of the Property (the "Cash Collateral Order").    A-418.    Contrary to the Debtors' assertions, the parties' agreement to the Cash Collateral Order was not "unusual," as all rents and proceeds generated from the Property were subject to GECMC's security interest and, therefore, as provided in section 363 of the Bankruptcy Code, could not be used in the chapter 11 cases without such an agreement and order.  In addition, the Cash Collateral Order was entered into at the Bankruptcy Court's recommendation.  A-379 at 14:18–21 ("I think [the Debtors] still have a couple of months to work out an exit strategy but they can't do that unless they work out a consensual basis for use of cash collateral . . . ."); A-379 at 15:3–6 ("[the Debtors] ought to work out a cash collateral arrangement where the cash is being used solely

for the expenses of running the building . . . .").  Without the benefit of the use of GECMC's cash collateral, the Debtors' chapter 11 cases would necessarily have been dismissed because there would have been no available funds to operate the Property and fund the chapter 11 cases.

Victor Dedvukaj ("Mr. Dedvukaj"), one of the Debtors' principals, was present in the courtroom for both hearings on the use of cash collateral and did not voice any objection to the entry of the Cash Collateral Order, other than to request that he be able to manage the Property.  A-403 at 11:15–17.  The Bankruptcy Court denied this request, and Mr. Dedvukaj relented without voicing any further objection.  A-403 at 11:18-21 (The Bankruptcy Court:  "That's not going to happen."; Mr. Dedvukaj: "Okay.").

The Cash Collateral Order set forth the terms by which the rents and other income relating to the Property, which constituted GECMC's "cash collateral" within the meaning of the Bankruptcy Code, could be used by the Receiver to operate and maintain the Property for the benefit of the Debtors' estates.  The Cash Collateral Order contained a standard provision providing the Debtors with a 90-day period to commence an adversary proceeding or contested matter challenging GECMC's secured claim and security interests.  A-418 at ¶ 7.  If the Debtors failed to do so, the Debtors, for themselves and for their estates, would be bound to an acknowledgment that (i) GECMC holds a valid, first priority secured claim which

is not subject to defense, counterclaim, or offset, (ii) the Debtors have no claims of any nature against GECMC, and (iii) GECMC holds a valid, binding, first priority, perfected and enforceable lien and security interest in the Property and other collateral. A-418 at ¶¶ 3–5.

As is customary in cash collateral orders, the Cash Collateral Order also contained a carve-out provision providing that GECMC's super-priority administrative claim granted thereunder would be subject to (i) allowed unpaid claims of the Debtors' attorneys for reasonable fees and expenses incurred during the chapter 11 cases up to an aggregate amount of $50,000 (the "Carve-Out"), (ii) amounts due to the Office of the United States Trustee, and (iii) the fees and commissions of a chapter 7 trustee (in the event the cases were converted and one was appointed) in an amount not to exceed $10,000. A-418 at ¶ 15.

## E. The Debtors' Allegations Regarding GECMC's Secured Claim.

The Debtors did not commence any contested matter or adversary proceeding challenging GECMC's secured claim or security interests within the 90-day period provided in the Cash Collateral Order. Therefore, in accordance with the Cash Collateral Order, the various acknowledgements regarding, among other things, the validity of GECMC's secured claim and security interests became binding on the Debtors and their estates.

In addition, pursuant to the Cash Collateral Order, Mr. Dedvukaj was ordered to pay $100,000 to the Receiver, representing the amount of tenant security deposits that the Debtors and Mr. Dedvukaj admitted they had absconded with and used for improper purposes.  A-418 at ¶ 12.  Mr. Dedvukaj did not pay such amounts to the Receiver and, on April 14, 2011, the Bankruptcy Court entered an order holding the Debtors and Mr. Dedvukaj in contempt of court for failing to do so and sanctioning Mr. Dedvukaj $500 per day until such payment was made.  A-572.  No such payments were ever made by the Debtors or Mr. Dedvukaj.

Nevertheless, on October 11, 2011, Mr. Dedvukaj filed a motion to, among other things, remove sanctions against him and the Debtors (the "Motion to Remove Sanctions").  A-599.  In addition, Mr. Dedvukaj purportedly submitted to the Bankruptcy Court a declaration, dated October 31, 2011 (but not docketed until April 2012), in support of the Motion to Remove Sanctions (the "Dedvukaj Declaration").[3]  A-1323.  To be clear, the Dedvukaj Declaration is not a motion and did not request reconsideration of the Cash Collateral Order.  Indeed, the Dedvukaj Declaration does not mention Federal Rule 60 or Bankruptcy Rule 9024 or any relief thereunder.  It does not ever use the phrase "cash collateral" or even

---

[3]   The Dedvukaj Declaration is the document that the Debtors have self-servingly labeled the "October 31, 2011 Motion."

so much as allude to the Cash Collateral Order.  In the Dedvukaj Declaration, Mr. Dedvukaj does, however, attack the validity of GECMC's secured claims.  Mr. Dedvukaj alleged that Michelle Leighton of Deutsche Bank did not actually sign a certain Allonge assigning the Note from Deutsche Bank to Wells Fargo.  In support, he attached to the Dedvukaj Declaration (i) a letter, dated October 26, 2011, from a forensic document examiner in which the examiner opines that the signature on the Allonge was not written by Ms. Leighton, and (ii) for comparison purposes, several documents containing a signature of Ms. Leighton that appears to be different from the signature on the Allonge.  A-1443.[4]

Therefore, by no later than approximately two months prior to the one-year anniversary of the entry of the Cash Collateral Order, the Debtors had all documents and materials that they asserted, in the Reconsideration Motion, supported their request for relief from the Cash Collateral Order.  Yet, the Debtors failed to seek relief from the Cash Collateral Order until March 7, 2012, nearly three months after the one-year anniversary of the Cash Collateral Order.

---

[4]  What is not clear is how the examiner arrived at his opinion that the signature on the Allonge, which matched the signature of Ms. Leighton on other Loan Documents, was not Ms. Leighton's signature as opposed to the signature on the other documents used by the examiner for comparison purposes not being Ms. Leighton's signature.

## F.    Confirmatory Assignment Documents.

In or around May 2007, Ms. Leighton executed the following three documents in connection with the assignment of the Loan Documents from Deutsche Bank to Wells Fargo:  (i) an Allonge; (ii) an Assignment of Assignment of Leases and Rents; and (iii) an Assignment of Mortgage.[5]  Pursuant to separate agreements, these Loan Documents were further assigned to GECMC.  A-1547.  In addition, to further demonstrate the validity of the assignment, German American Capital Corporation, as successor in interest to Deutsche Bank (A-1575), executed a Confirmatory Allonge, Confirmatory Assignment of Mortgage, and Confirmatory Assignment of Assignment of Leases and Rents, each dated April 23, 2012 (collectively, the "Confirmatory Loan Documents"), confirming that the Note, Mortgage, and Assignment of Leases and Rents were properly assigned by Deutsche Bank to Wells Fargo effective in May 2007.  A-1577; A-1596; A-1609.

## G.    The Reconsideration Motion and Order.

On March 7, 2012, more than fourteen months after entry of the Cash Collateral Order, the Debtors filed the Reconsideration Motion seeking to be

---

[5]    Both the Assignment of Assignment of Leases and Rents and the Assignment of Mortgage, which contain the same form of signature of Ms. Leighton as the Allonge, were notarized (*See* A-1881; A-1894; A-1899), which creates a presumption of due execution. *See Chianese v. Meier*, 729 N.Y.S.2d 460, 466, 285 A.D.2d 315 (1st Dep't 2001), *aff'd as modified*, 98 N.Y.2d 270, 279 (2002) ("Where a document on its face is properly subscribed and bears the acknowledgement of a notary public, there is a 'presumption of due execution, which may be rebutted only upon a showing of clear and convincing evidence to the contrary.'") (citations omitted).

14

relieved of certain select provisions of the Cash Collateral Order.  A-737.  At a hearing held on May 3, 2012, the Bankruptcy Court issued a ruling denying the Reconsideration Motion.  A-1975.  In its bench ruling, the Bankruptcy Court found, among other things, that (i) relief under Federal Rule 60(b)(1) through (3) was improper because the Reconsideration Motion "was filed well after one year after the entry of the cash collateral order" (A-1975 at 11:14–18), (ii) relief under Federal Rule 60(b)(6) was improper because such provision "is not an escape hatch for failing to meet the limitation period in Rule 60" (A-1975 at 11:19–12:6), and (iii) the Debtors failed to demonstrate any entitlement to relief under Federal Rule 60(d)(1) or (3) (A-1975 at 12:7–8).  The Bankruptcy Court found that the Cash Collateral Order was binding on the Debtors and their estates, and "GECMC in fact is the holder of a secured claim, the note and the mortgage."  A-1975 at 19:9–11.  Moreover, the Bankruptcy Court stated as follows: "I conclude that based upon GECMC's supplemental memorandum in which it states and attaches exhibits [*i.e.*, the Confirmatory Loan Documents] supporting the statement that Deutsche Bank and [GECMC] have corrected what the debtor contends was a defect in the chain of title renders the dispute moot in any event."  A-1975 at 16:1–6.  On May 16, 2012, the Bankruptcy Court entered the Reconsideration Order denying the Reconsideration Motion in its entirety.

**H.    The Appeal.**

On May 29, 2012, the Debtors filed a notice of appeal of the Reconsideration Order to the District Court and, on June 11, 2012, filed their statement of issues on appeal and designation of the record.  A-2184; A-2190.  On August 15, 2012, the Debtors filed a motion to supplement the record on appeal to include, among other things, an order entered by the State Court on June 14, 2012 in connection with the foreclosure proceeding (the "June 14 State Court Order").  Bk. Dkt. No. 308.   On October 23, 2012, the Bankruptcy Court entered an order providing that the June 14 State Court Order shall not be included in the record on appeal.  Bk. Dkt. No. 346.

On December 27, 2012, the District Court entered an opinion and order affirming the Reconsideration Order and finding that the Bankruptcy Court did not abuse its discretion in denying the Reconsideration Motion.  A-2273.  On January 23, 2013, the Debtors appealed the District Court's opinion and order to this Court.  On May 20, 2013, the Debtors filed their opening brief in this Appeal ("Appellants' Brief").[6]

## SUMMARY OF ARGUMENT

The Bankruptcy Court acted well within its discretion in denying the Reconsideration Motion.  Under applicable law, a motion for reconsideration of an

---

[6]    Citations to Appellants' Brief will be to "Appellants' Br. at ____."

order must be filed within one year of entry of the applicable order, and the Debtors failed to file the Reconsideration Motion within this time-frame. *See* FED. R. CIV. P. 60(c) (A motion for relief under Federal Rule 60(b)(1) through (b)(3) "must be made within a reasonable time . . . [but] no more than a year after the entry of the judgment or order or the date of the proceeding."). Otherwise, the movant must satisfy an elevated burden of proof, demonstrate extraordinary circumstances, and show that the relief could not have been sought within the otherwise applicable one-year period and that the asserted grounds for relief are not recognized in clauses (1) through (5) of Federal Rule 60(b). The Debtors have not satisfied any of these requirements. Instead, they have made baseless accusations of fraud and misconduct they claim was perpetrated on them and have provided no valid reason why the Reconsideration Motion was not filed before the one-year deadline expired.

As an initial matter, the Debtors' accusations are unfounded as the record in this case is clear that there was no fraud or misconduct. Importantly, through the Confirmatory Loan Documents, Deutsche Bank has confirmed the validity of the assignment of the Loan Documents to Wells Fargo. In addition, Mr. Dedvukaj was present in the courtroom for all hearings on the Cash Collateral Order and voiced no objection to its entry. It is preposterous that the Debtors now belatedly claim they were not aware of the order or that they instructed their counsel not to sign it.

Regardless, fraud and misconduct are express grounds for relief under Federal Rule 60(b)(3), which is subject to the strict requirement that the motion be filed within one year.   The Debtors are not entitled to the relief requested in the Reconsideration Motion and the Bankruptcy Court properly exercised its discretion in denying such motion.

## ARGUMENT

### A.    Arguments Raised for the First Time on Appeal Have Been Waived and Should Not be Considered by this Court.

The Debtors have introduced several new arguments on appeal that were not raised before the Bankruptcy Court in connection with the Reconsideration Motion.   New arguments being raised by the Debtors for the first time on appeal include the following:

- The Cash Collateral Order should not have been entered into because the Receiver was managing and operating the Property;

- The Debtors' former counsel negotiated and agreed to the Cash Collateral Order without the Debtors' consent;

- The Carve-Out was a payment to the Debtors' counsel in exchange for their agreement to sign the Cash Collateral Order; and

- The Dedvukaj Declaration should be deemed a timely filed motion for relief from the Cash Collateral Order under Federal Rule 60.

"[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."  *Bogle–Assegai v. Conn.*, 470 F.3d 498, 504 (2d Cir. 2006) (citing *Greene v. U.S.*, 13 F.3d 577, 586 (2d

Cir.1994)); *see also Androse Assocs. of Allaire, LLC v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, 472 B.R. 666, 678–79 (S.D.N.Y. 2012) (appellants waived arguments that were raised for the first time on appeal); *Park v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 90 (S.D.N.Y. 2010) (rejecting argument that was "not raised below and is not properly raised for the first time on appeal."). The Debtors argue that they attempted to raise certain of these arguments in Bankruptcy Court, but the record is clear that these arguments were not properly presented to or considered by the Bankruptcy Court in connection with the Reconsideration Motion. Accordingly, these arguments have been waived and should not be considered by the Court in connection with this Appeal.

**B.    The Debtors' Request for Relief Under Federal Rule 60(b)(1) – (3) Was Untimely.**

      1.    *The Reconsideration Motion Was Filed More Than One Year After the Cash Collateral Order Was Entered.*

The Debtors' argument that the Bankruptcy Court erred in denying relief under Federal Rule 60(b)(1) through (3) must fail. The Federal Rules expressly provide that relief under these provisions must be sought within one year after entry of the applicable order or judgment, and this is a firm deadline that cannot be extended under any circumstances. The Debtors, however, did not file the Reconsideration Motion until more than fourteen months after the date of entry of

the Cash Collateral Order. Therefore, the Reconsideration Motion was time-barred.

Federal Rule 60(b)(1) through (3) permits a party to seek relief from a judgment or order for, among other things, "mistake," "excusable neglect," "newly discovered evidence," "fraud," "misrepresentation," or "misconduct." FED. R. CIV. P. 60(b)(1)–(3). In the Reconsideration Motion and Appellants' Brief, it is clear that the Debtors are alleging they are entitled to relief because of purported fraud, misrepresentation, and misconduct. Therefore, the appropriate grounds to move under are Federal Rule 60(b)(1) through (3). A motion under these provisions, however, cannot be made more than one year after entry of the applicable order. *See* FED. R. CIV. P. 60(c) (A motion for relief under Federal Rule 60(b)(1) through (b)(3) "must be made within a reasonable time . . . [but] no more than a year after the entry of the judgment or order or the date of the proceeding."). This one-year time frame is a strict deadline and may not be extended by the Court under any circumstances. *See* FED. R. BANK. P. 9006(b)(2) ("The court may not enlarge the time for taking action under [Rule] . . . 9024");[7] *see also Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (the one-year limitation period governing Federal Rule 60(b) motions is "absolute"). The Cash Collateral Order was entered more than one year prior to the filing of the Reconsideration Motion. Therefore, under

Federal Rule 60(c), the Debtors were time-barred from seeking relief from the Cash Collateral Order, and the Bankruptcy Court correctly concluded the same.

The Debtors also suggest that the delay in seeking relief was caused by their former counsel. *See* Appellants' Br. at p.8. Neglect of former counsel, however, cannot excuse the delay in seeking Federal Rule 60 relief. *See In re Taylor*, 357 B.R. 360, 366 (Bankr. W.D. Pa. 2006) (rejecting debtors' arguments that a reconsideration motion should be deemed timely because the delay was caused by the neglect of its former counsel, noting that "'[t]he [U.S.] Supreme Court has made it clear that the neglect of the attorney is to be treated as the neglect of the client.'") (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)). In addition, in February 2011, Ms. Dwyer, the Debtors' former counsel, actually filed a motion on behalf of the Debtors seeking reconsideration of another order that was entered in the chapter 11 cases, thus demonstrating that the Debtors' counsel was aware that such relief could be sought. A-462. In sum, the Debtors failed to file the Reconsideration Motion by the statutory deadline set forth in Federal Rule 60(c) and, therefore, are not entitled to relief under Federal Rule 60(b)(1) through (3).

---

[7]    Federal Rule 60 is made applicable by Bankruptcy Rule 9024.

2. *The Debtors' Arguments Regarding the Dedvukaj Declaration Should Be Rejected.*

    a.     The Dedvukaj Declaration is Null and Void as an Improper *Pro Se* Filing.

The Dedvukaj Declaration was filed in support of a separate motion to remove sanctions imposed against Mr. Dedvukaj, but purports to request relief for the Debtors. *See* Dedvukaj Declaration, A-1323 at ¶ 147 (listing relief that "Hoti Enterprises L.P. respectfully pray [sic] of the Court"). During the entire course of the bankruptcy cases, however, the Debtors were represented by counsel and, therefore, under applicable law, could only act by and through such counsel in requesting relief from the Bankruptcy Court. In February 2011, substantially contemporaneous with the withdrawal of the Debtors' prior counsel, Rattet Pasternak, Ms. Dwyer submitted an application to the Bankruptcy Court to be retained as counsel to the Debtors. Ms. Dwyer also submitted a letter notifying the Bankruptcy Court that she was substituting as counsel to the Debtors in place of Rattet Pasternak. Bk. Dkt. No. 62. Subsequently, Ms. Dwyer filed pleadings with the Bankruptcy Court as Debtors' counsel seeking relief for the Debtors. A-462. Ms. Dwyer remained as attorney of record for the Debtors and could not be withdrawn or replaced except by order of the Bankruptcy Court for cause shown. Specifically, Rule 2090-1(e) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") provides as follows:

> *Withdrawal as Attorney of Record*.  An attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown.

S.D.N.Y. LBR 2090-1(e); *see also Lubit v. Chase (In re Chase)*, 372 B.R. 142, 151 (Bankr. S.D.N.Y. 2007) (attorney of record must withdraw in accordance with Local Bankruptcy Rule 2090-1(e)).

No order was ever entered by the Bankruptcy Court allowing Ms. Dwyer to withdraw as counsel to the Debtors, and it was not until February 14, 2012 that the Bankruptcy Court entered an order authorizing the Debtors to retain Pick & Zabicki LLP as substitute counsel.  Bk. Dkt. No. 124.  Since the Debtors were represented by counsel in October 2011, the Debtors could only seek relief from the Bankruptcy Court by and through their counsel.  *See*, *e.g.*, *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 422 (4th Cir. 1990) ("because the defendant and his firm were represented by retained counsel, defendant Moretz had no right to proceed pro se . . . .  In order for defendant Moretz to have proceeded pro se he must have immediately discharged the other attorneys who had filed appearances on his behalf."); *United States v. Wolfish*, 525 F.2d 457, 462–63 (2d Cir. 1975) (the individual "had an experienced counsel and, so long as he retained him, he could not appear pro se.").

In addition, it is well-established that a corporation or other artificial entity cannot appear *pro se* but, rather, must be represented by an attorney licensed to

practice law before the applicable court.  *See*, *e.g.*, *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("The rule that a corporation may litigate only through a duly licensed attorney is venerable and widespread.") (citations omitted); *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) ("it is settled law that a corporation cannot appear other than by its attorney."); *Bell v. South Bay European Corp.*, 486 F. Supp. 2d 257, 260 (S.D.N.Y. 2007) ("a lay person may not represent an entity.").  The requirement to appear only through a licensed attorney extends to organizations other than corporations, including partnerships.  *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) ("28 U.S.C. § 1654 prohibits a layperson from appearing on behalf of a partnership.").  The appearance of an artificial entity *pro se* is "at all times a nullity and will be treated as such."  *Frayler v. N.Y. Stock Exchange, Inc.*, 118 F. Supp. 2d 448, 450 n.2 (S.D.N.Y. 2000).  Mr. Dedvukaj, a non-lawyer individual, was improperly purporting to seek relief on behalf of the Debtors, both of which are artificial entities.  Accordingly, the Dedvukaj Declaration is a nullity and should be disregarded.

      b.    The Debtors' Arguments Regarding Notice Pleading Must Fail.

The Debtors' argument that the Dedvukaj Declaration should be deemed a timely motion for reconsideration of the Cash Collateral Order under "notice pleading" standards cannot withstand scrutiny.  **First**, the Dedvukaj Declaration is

not even a motion, which is the statutorily required means to seek relief under Federal Rule 60. *See* FED. R. CIV. P. 60(b) ("On <u>motion</u> and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . .") (emphasis added). Rather, the Dedvukaj Declaration is a declaration allegedly filed by Mr. Dedvukaj in support of an entirely separate motion—the Motion to Remove Sanctions. Even assuming, *arguendo*, that the Dedvukaj Declaration was considered a motion, it would be, at best, a motion challenging the validity of GECMC's secured claim, which was time-barred by the express terms of the Cash Collateral Order. A-418 at ¶ 7 (requiring any adversary proceeding or contested matter challenging the validity, enforceability or priority of GECMC's secured claim to be commenced within "ninety (90) days from the Filing Date").[8]

**Second**, the Dedvukaj Declaration does not ever use the phrase "cash collateral" or even so much as allude to the Cash Collateral Order. It does not mention Federal Rule 60 or Bankruptcy Rule 9024 or even imply that reconsideration of the Cash Collateral Order is being sought. Accordingly, there is no rational basis for deeming the Dedvukaj Declaration a motion to reconsider the

---

[8]    In addition, the Dedvukaj Declaration does not even appear to have been properly filed prior to the one-year deadline given that it was not docketed until April 2012.

Cash Collateral Order or suggesting that the Court or any party should have been on notice that such relief was being sought in the Dedvukaj Declaration.

**Third**, even assuming that the Dedvukaj Declaration should be considered a motion, as the Debtors argue, a motion is not a pleading and, therefore, "notice pleading" does not apply.  Under the Federal Rules, a "pleading" is limited to the following documents:  (i) a complaint; (ii) an answer to a complaint; (iii) an answer to a counterclaim designated as a counterclaim; (iv) an answer to a crossclaim; (v) a third-party complaint; (vi) an answer to a third-party complaint; and (vii) if the court orders one, a reply to an answer.  *See* FED. R. CIV. P. 7(a); *see also S.E.C. v. Sassano*, No. 09 CIV. 5010 (LBS) (GWG), 2011 WL 2693881, at *2 (S.D.N.Y. July 11, 2011) ("[C]ourts have . . . [pointed] out that 'new claims must be asserted in pleadings,' and 'a motion is not a pleading . . . .'") (citations omitted); *Bagnato v. The Home Depot*, No. 03-CV-0789E (SC), 2004 WL 625270, at *1 n.7 (W.D.N.Y. Jan. 15, 2004) ("A motion is not a pleading – as evidenced by the text of Rule 7 of the Federal Rules of Civil Procedure.").

Therefore, the Debtors' argument that, under a theory of notice pleading, the Dedvukaj Declaration should be deemed a timely file motion under Federal Rule 60 should be rejected by this Court.

**C.    Relief Under Federal Rule 60(b)(6) is Not Justified.**

The Debtors' effort to seek relief under Federal Rule 60(b)(6) is nothing more than a transparent attempt to avoid the one-year limitations period and was properly rejected by the lower courts.  "[I]t is well-established that Rule 60(b)(6) should not be used to circumvent the one-year limitations period that applies to the specific clauses."  *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 136 (S.D.N.Y. 2009), *aff'd* 367 Fed.Appx. 180 (2d Cir. 2010).  The Second Circuit has found that clause (6) of Federal Rule 60(b):

> is properly invoked only when there are extraordinary circumstances justifying relief, . . . when the judgment may work an extreme and undue hardship, . . . and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule.

*Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986).

The Debtors repeatedly allege fraud and misconduct as the bases for the relief requested.  *See*, *e.g.*, Appellants' Br. at pp.16–17.  The Debtors then argue that the alleged fraud is not covered by Federal Rule 60(b)(3) and, therefore, relief under Federal Rule 60(b)(6) is appropriate.  Further, the Debtors contend that "misconduct is not a reason itemized in Rule 60(b)(1) through (3)."  Appellants' Br. at p.17.  To say that allegations of fraud and misconduct are not covered by Federal Rule 60(b)(1) through (3) is disingenuous and ignores the plain text of these provisions.  *See* FED. R. CIV. P. 60(b)(3) (a party may file a motion for relief from a judgment or order on the basis of "*fraud* . . ., misrepresentation, or

27

*misconduct* by an opposing party.") (emphasis added).  The Debtors' arguments in this regard have no merit and should be rejected by this Court.

**D.    The Bankruptcy Court Did Not Abuse Its Discretion in Denying the Debtors' Request for Relief Under Federal Rule 60(d)(1).**

The Debtors' request for relief under Federal Rule 60(d)(1) was untimely, improper, unsupported by sufficient evidence and, therefore, properly rejected by the Bankruptcy Court.

1.    *The Debtors' Request for Relief Under Federal Rule 60(d)(1) Was Untimely and Improper.*

Courts in the Second Circuit and elsewhere have made it clear that where a party sleeps on its rights and allows the one-year time limit for bringing an action under Federal Rule 60(b)(3) to pass, it cannot later obtain relief under Federal Rule 60(d)(1) on the basis of fraud.  *See Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 662–63 (2d Cir. 1997) ("Since [the debtors] premise their independent action for equitable relief on fraud, they had ample time to submit a Rule 60(b)(3) motion before the [one year] deadline."); *LinkCo.*, 615 F. Supp. 2d at 139–41.  The Debtors offer no valid explanation as to why they did not timely seek relief from the Cash Collateral Order within one year of its entry.  As noted above, on October 11, 2011, Mr. Dedvukaj filed the Motion to Remove Sanctions in which he made allegations of fraud against GECMC and, in the Dedvukaj Declaration, dated October 31, 2011, Mr. Dedvukaj alleged that Ms. Leighton did

not actually sign the Allonge assigning the Note from Deutsche Bank to Wells Fargo. In the Reconsideration Motion, the Debtors made the same arguments and relied on the same documents and materials referenced in and attached to the Dedvukaj Declaration.

Therefore, by no later than October 2011, two months prior to the one-year anniversary of the entry of the Cash Collateral Order, the Debtors had all documents and materials that they asserted in the Reconsideration Motion supported their request for relief from the Cash Collateral Order. Yet, the Debtors failed to seek relief from the Cash Collateral Order until March 7, 2012. Accordingly, the Bankruptcy Court correctly concluded that the Debtors' request for relief was untimely. Indeed, the Bankruptcy Court noted:

> Here, as is clear from the record in this case, well more than a year before the Rule 9024 motion was filed, the debtors were aware and had asserted their belief that GECMC does not sit in an unobstructed position with a clean chain of title and that, in fact, its position may be tainted by fraud. Nevertheless, it did not make this motion until well over a year after it is clear that the debtor knew the foregoing. That alone would be sufficient under the *Campaniello* and *Link Co.* cases to require denial of the motion under Rule 60(d)(1).

A-1975 at 15:9–17.

The Debtors failed to seek relief under Federal Rule 60(b)(3), despite having sufficient time to do so. They cannot circumvent the one-year time limit by

seeking relief under Federal Rule 60(d)(1).  As noted by the Court in *Jackson v.*

*Kerns*, No. 96 Civ. 6171 (MGC), 2005 WL 3086662 (S.D.N.Y. Nov. 18, 2005):

> "Plaintiff was aware of the alleged fraud prior to the expiration of the one-year period in which plaintiff could have filed a Rule 60(b)(3) motion . . . . Plaintiff's failure to pursue his remedy at law under Fed. R. Civ. P. 60(b)(3) now bars him from asserting an independent claim for equitable relief."

*Id*. at *2.  The same rational applies to this case.  The Debtors failed to timely

pursue their remedies under Federal Rule 60(b) and, as a result, are barred from

seeking relief under Federal Rule 60(d)(1).

2.    *The Debtors Have Not Satisfied Their Burden of Proof Under Federal Rule 60(d)(1).*

Even if a claim under Federal Rule 60(d)(1) were deemed to have been

timely, the Debtors have not satisfied the elevated burden of proving entitlement to

relief thereunder.  To establish a right to relief under Federal Rule 60(d)(1), a party

must (i) show that it has no other available or adequate remedy, (ii) demonstrate

that its own fault, neglect, or carelessness did not create the situation for which it

seeks equitable relief, and (iii) establish a recognized ground for the equitable

relief, such as fraud, accident, or mistake.  *See LinkCo.*, 615 F. Supp. 2d at 135

(citing *Campaniello*, 117 F.3d at 662).  A party seeking relief under Federal Rule

60(d)(1) must show that permitting the judgment to stand would be "a grave

miscarriage of justice."   *LinkCo.*, 615 F.Supp.2d at 135.  A "grave miscarriage of

justice" is a "stringent" standard, and relief pursuant to an independent action

30

should only be available in "unusual and exceptional circumstances." *See Gottlieb v. S.E.C.*, 310 Fed.Appx. 424, 425 (2d Cir. 2009).

In order to sustain an independent action based on fraud, the plaintiff must satisfy the pleading requirements for fraud, which are more rigorous when alleging fraud under Federal Rule 60(d)(1). *See Campaniello*, 117 F.3d at 662–63. "[T]he type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion." *LinkCo.*, 615 F. Supp. 2d at 135 (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988)). In addition, the Debtors must prove fraud by clear and convincing evidence. *See James v. U.S.*, 603 F. Supp. 2d 472, 487 (E.D.N.Y. 2009).

As discussed below, the Debtors have made nothing more than baseless accusations of fraud with no evidence in support. They have not shown any "grave miscarriage of justice" or "unusual and exceptional circumstances" warranting a grant of relief under Federal Rule 60(d)(1) and, therefore, their request for relief under this provision was properly denied.

a.    No Evidence of Fraud in Connection with Loan Documents.

The Assignment of Mortgage and Assignment of Assignment of Leases and Rents, which the Debtors allege were not actually signed by Ms. Leighton, were both notarized, which creates a presumption that the documents were duly

executed. *See Chianese v. Meier,* 729 N.Y.S.2d 460, 466, 285 A.D.2d 315 (1st Dep't 2001), *aff'd as modified,* 98 N.Y.2d 270, 279 (2002) ("Where a document on its face is properly subscribed and bears the acknowledgement of a notary public, there is a 'presumption of due execution, which may be rebutted only upon a showing of clear and convincing evidence to the contrary.'") (citations omitted). Also, the form of Ms. Leighton's signature on the Allonge, while not notarized, is exactly the same as her signature on the two notarized documents.

In support of their request for relief from the Cash Collateral Order, the Debtors submitted documents showing a signature of Ms. Leighton that appears different from her signature on the Allonge, Assignment of Mortgage, and Assignment of Assignment of Leases and Rents. The Debtors, however, have submitted no evidence demonstrating that any of Ms. Leighton's signatures is in fact a forgery. The Bankruptcy Court made a factual finding that "GECMC in fact is the holder of a secured claim, the note and the mortgage." A-1975 at 19:9–11. This finding is reviewable only for clear error, and no such error has been shown by the Debtors.

        b.    <u>No Proof of Lack of Consent to the Cash Collateral Order</u>.

As discussed above, the Debtors' assertion that they did not consent to the Cash Collateral Order is a new argument on appeal that should not be considered by this Court. Regardless, the Debtors have submitted no evidence showing that

they did not consent to the Cash Collateral Order. Mr. Dedvukaj was present in the courtroom for both hearings on the use of cash collateral and even personally addressed the Bankruptcy Court during such proceedings. He did not voice any objection to the entry of the Cash Collateral Order, other than to request that he be permitted to manage the Property. A-403 at 11:15–17. The Bankruptcy Court denied this request, and Mr. Dedvukaj relented without voicing any further objection. A-403 at 11:18-21 (The Bankruptcy Court: "That's not going to happen."; Mr. Dedvukaj: "Okay."). Mr. Dedvukaj made no indication to the Bankruptcy Court that he did not agree to the Cash Collateral Order or that he refused or would refuse to authorize his counsel to sign it on behalf of the Debtors. Further, the Debtors' argument regarding lack of consent is belied by the fact that the Reconsideration Motion only seeks relief from certain select provisions of the Cash Collateral Order, and not the entire order. A-737 at ¶ 2.

In addition, the Debtors' newly-asserted argument that the Receiver's continued possession and control of the Property obviated the need for the Cash Collateral Order demonstrates a fundamental misunderstanding of Bankruptcy Code section 363. All rents and other proceeds of the Property were subject to GECMC's security interests and, therefore, constituted cash collateral within the meaning of section 363(a) of the Bankruptcy Code. *See* 11 U.S.C. § 363(a). Under section 363 of the Bankruptcy Code, this cash collateral could not be used

by any other party unless (i) GECMC consented to its use or the Bankruptcy Court authorized its use, and (ii) GECMC was provided with adequate protection of its interest in the cash collateral. *See* 11 U.S.C. § 363(c) and (e).

Accordingly, a receiver remaining in possession of a debtor's property during the bankruptcy case does not lessen or eliminate the need for an agreement with the secured creditor regarding the use of cash collateral. *See In re R&G Props., Inc.*, Case No. 08-10876, 2009 WL 2043875, at *6–7 (Bankr. D. Vt. July 6, 2009) (granting adequate protection to secured creditor in exchange for receiver's continued use of cash collateral to operate and maintain debtor's property); *In re Lizeric Realty Corp.*, 188 B.R. 499, 502 (Bankr. S.D.N.Y. 1995) (noting that secured creditor "has consented to the receiver's use of cash collateral to the extent necessary to pay normal operating costs of the [debtor's] Building.").

Rather, a cash collateral stipulation and/or order are routinely entered into where a receiver remains in possession of a debtor's property under section 543(d) of the Bankruptcy Code. *See In re Acorn Elston, LLC*, Case No. 10-14807 (SHL) (Bankr. S.D.N.Y. Sept. 11, 2010) (order entered directing state-court appointed receiver to remain in possession, excusing the receiver from the turnover requirements of sections 543(a) and (b) of the Bankruptcy Code, and authorizing the receiver to use the secured lender's cash collateral during the debtor's bankruptcy case); *see also In re Vintage Condo. Dev., LLC*, Case No. 13-08431

34

(DPC) (Bankr. D. Ariz. May 17, 2013) (court excused state-court appointed receiver from turnover requirement of section 543(d) and subsequently granted motion to use cash collateral.); *CDC Prop. II, LLC*, Case No. 11-44554 (PBS) (Bankr. W.D. Wash. June 2, 2011) (same); *La Jolla UTC Corp.*, Case No. 11-05973 (Bankr. S.D. Cal. Apr. 11, 2011) (same).

As demonstrated during the hearings on the use of cash collateral, the Bankruptcy Court was willing to allow the Debtors a period of time (90 days) to try to find a solution acceptable to GECMC, but only if the Debtors were able to agree on the terms of the use of cash collateral. If no agreement could be reached, the Bankruptcy Court likely would have dismissed the cases. The Debtors were aware that the Cash Collateral Order was being entered, consented to or otherwise did not object to its entry, and should be precluded from now claiming otherwise.

c.    The Debtors' Argument Regarding the Carve-Out is Absurd.

Despite the Debtors' new and baseless accusations (which should not be considered on appeal), the Carve-Out was not some improper payment to induce Debtors' counsel to sign the Cash Collateral Order. The Debtors' assertion in this regard is a gross and reckless mischaracterization of the Carve-Out and is contrary to well-established practices and procedures in bankruptcy cases.

There is nothing "extraordinary" about the Carve-Out, as it is customary in cash collateral orders and is intended to benefit debtors and bankruptcy estates to

ensure payment of a debtor's professionals. *See Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 67 (2d Cir. 1998) ("'counsel fee carve-outs' are a normal and enforceable provision in cash collateral stipulations.") (citations omitted); *see also In re White Glove, Inc.*, Case No. 98-12493 DWS, 98-12494 DWS, 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998) ("Carve outs are also common in Chapter 11 cases in favor of debtor's attorneys as part of cash collateral agreements."). The Carve-Out was simply an acknowledgement that GECMC's super-priority administrative claim would be subject to the administrative claims of the Debtors' professionals up to the $50,000 cap. Such a provision appears in nearly all cash collateral orders and stipulations in chapter 11 cases. The Debtors' argument that this provision was extraordinary and intended as some sort of payoff to the Debtors' counsel are inflammatory and unsupported by anything in the record.

  3. *The Confirmatory Assignment Documents Mooted the Debtors' Arguments of Fraud.*

  The Debtors' arguments regarding Ms. Leighton's signature being a forgery, even if they had been accurate in the first place which they were not, were rendered moot by the Confirmatory Loan Documents. The purpose of the Debtors' arguments of fraud regarding the Loan Documents is to attempt to demonstrate that Deutsche Bank did not actually assign the Loan Documents to Wells Fargo. The Confirmatory Loan Documents, however, confirm and prove that the Loan

Documents were in fact assigned to Wells Fargo. The Confirmatory Loan Documents cured any purported defects that may have existed in the prior Loan Documents and, therefore, render the Debtors' arguments of fraud moot. A-1975 at 16:1–6 ("I conclude that based upon GECMC's supplemental memorandum in which it states and attaches exhibits [*i.e.*, the Confirmatory Loan Documents] supporting the statement that Deutsche Bank and [GECMC] have corrected what the debtor contends was a defect in the chain of title renders the dispute moot in any event.").

Accordingly, even assuming, *arguendo*, that the Reconsideration Motion was not time-barred, the Debtors have not satisfied their burden of showing any entitlement to relief under Federal Rule 60(d)(1).

**E.    The Bankruptcy Court Did Not Abuse Its Discretion in Finding That There Was No "Fraud on the Court" Under Federal Rule 60(d)(3).**

The Bankruptcy Court correctly determined that the Debtors failed to meet their heightened burden of showing any "fraud on the court" warranting relief under Federal Rule 60(d)(3). "Fraud upon the court must be established by clear and convincing evidence." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002); *see also In re Old Carco LLC*, 423 B.R. 40, 51 (Bankr. S.D.N.Y. 2010) ("[B]ecause of the importance of preserving the finality of a judgment, a court must use restraint and discretion in determining whether to vacate such judgment . . . . There must be clear and convincing evidence that a fraud was

37

perpetrated on the court with any doubts resolved in favor or upholding the finality of the judgment").

The standard for establishing fraud on the court under Federal Rule 60(d)(3) is "higher and distinct from the more general standard for fraud under [Rule] 60(b)(3)." *United States v. Smiley*, 553 F.3d 1137, 1144–45 (8th Cir. 2009); *Space Hunters, Inc. v. United States*, No. 10 Civ. 6335 (CM), 2011 WL 1899627, at *3 (S.D.N.Y. May 17, 2011) ("the standard to prove 'fraud on the court' under Rule 60(d) is extremely high"). A finding of fraud on the court may be justified "only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury, or fabrication of evidence by counsel." *Smiley*, 553 F.3d at 1145; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (fraud on the court should embrace "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases").

No such showing has been made by the Debtors. Instead, they allege basic fraud that would properly be asserted under Federal Rule 60(b)(3). Since the fraud alleged falls within the scope of Federal Rule 60(b)(3), the Debtors are not permitted to use Federal Rule 60(d)(3) as justification for the relief requested. *See*

*In re Old Carco*, 423 B.R. at 51 ("[M]otions under 60(d)(3) for fraud on the court must encompass conduct other than that proscribed by Rule 60(b)(3)").

The Debtors have asserted no valid basis for relief under Federal Rule 60 and, regardless, their delay in seeking the relief requested in the Reconsideration Motion was fatal.  Accordingly, the Bankruptcy Court properly exercised its discretion in denying the Reconsideration Motion.

## F.    The June 14 State Court Order Was Stricken From the Record and Cannot Be Considered on Appeal.

In blatant disregard of a Bankruptcy Court order, the Debtors copied and pasted into Appellants' Brief a lengthy excerpt from the June 14 State Court Order as support for their argument as to why the Reconsideration Order should not have been entered.  The June 14 State Court Order was not entered until approximately one month after the Reconsideration Order was entered and, therefore, could not possibly have been considered by the Bankruptcy Court in rendering its decision on the Reconsideration Motion.  In addition, the Debtors previously sought to include the June 14 State Court Order in the record on appeal of the Reconsideration Order, but the Bankruptcy Court entered an order expressly providing that the June 14 State Court Order "shall not be included in the record on appeal with respect to the [Debtors'] appeal of the Reconsideration Order."  Bk. Dkt. No. 346.

"[T]he touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from."  *NWL v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005).  Material not included in the record on appeal should not be considered by the appellate court. *See Shangold v. Walt Disney Co.*, 275 Fed.Appx. 72, 73 (2d Cir. 2008) (citing *Loria v. Gorman*, 306 F.3d 1271, 1280 n. 2 (2d Cir.2002)); *see also Petitions of Rudder*, 159 F.2d 695, 696 (2d Cir. 1947) ("Since the material printed in the appendices has not been incorporated into the records on appeal, we shall not consider it in determining the merits of the appeals.").

The Debtors acknowledge that the June 14 State Court Order is not part of the record, but simply state, without any justification or support, their desire for this Court to consider it anyway.  The Debtors' inclusion of the June 14 State Court Order in Appellants' Brief was improper and violates the Bankruptcy Court's order striking the document from the record.  The June 14 State Court Order was not part of the record in either the Bankruptcy Court or District Court proceedings on this issue and should not be considered now by the Court in this Appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, GECMC respectfully requests that the Court affirm the Reconsideration Order in all respects and grant such other and further relief as it deems just and proper.

Dated:  August 19, 2013
       New York, New York

                            **DLA PIPER LLP (US)**

                            /s/ George B. South III
                            George B. South III
                            Daniel G. Egan
                            1251 Avenue of the Americas
                            New York, New York 10020-1104
                            Tel:  (212) 335-4500
                            Fax:  (212) 335-4501

                            *Counsel for Appellee GECMC 2007 C-1*
                            *Burnett Street, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure ("FRAP") because it contains 9,709 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  August 19, 2013
        New York, New York

                                        **DLA PIPER LLP (US)**

                                        /s/ George B. South III
                                        George B. South III
                                        Daniel G. Egan
                                        1251 Avenue of the Americas
                                        New York, New York 10020-1104
                                        Tel:  (212) 335-4500
                                        Fax:  (212) 335-4501

                                        *Counsel for Appellee GECMC 2007 C-1*
                                        *Burnett Street, LLC*